**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3940
_____

RICHARD EVANS,
                                        Appellant

v.

SUPERINTENDENT KENNETH CAMERON, in his official and individual capacity;
JAMIE BOYLES, in his official and individual capacity; MAJOR JADLOCKI, in his
official and individual capacity; CAPTAIN FRANCIS PIROZZOLA, in his official and
individual capacity; UNIT MNG. DARRIN REID, in his official and individual capacity;
COUNSELOR TONY KUKUCKA, in his official and individual capacity; OFFICER
WOOLRIDGE, in his official and individual capacity; OFFICER CLAWSON, in his
official and individual capacity; OFFICER HIPPO, in his official and individual capacity;
OFFICER SWEET, in his official and individual capacity; SARGEANT JOHN DOE, in
his official and individual capacity; OFFICER MYERS, S.C.I. Cresson
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-09-cv-00017)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 16, 2011
Before:  RENDELL, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed: August 22, 2011)
_____

OPINION
_____

PER CURIAM

In this civil rights action, Richard Evans, a pro se litigant, appeals from the District Court's order granting the defendants' motion for summary judgment. For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

Shortly after 11 a.m. on June 20, 2007, Richard Evans, a state prisoner, was attacked by other inmates at SCI-Cresson. The attacks occurred in essentially three phases. (1) Evans was attacked in his cell by another inmate, Cooper. At the same time, Evans' cellmate was attacked by inmate Coleman. Evans suffered nine small puncture wounds to his back and neck. (2) Evans went to the control office to report the assault. As Evans was identifying his attackers to Corrections Officer ("C.O.") Woolridge, Cooper approached Evans and punched Evans in the face. C.O. Woolridge restrained Cooper and instructed Evans to wait by a water fountain. (3) Next, Coleman and an unidentified inmate attacked Evans by repeatedly kicking him in the face. Evans' cellmate attempted to intervene and was himself attacked. According to Evans, prison personnel allowed the fight to continue for 45 minutes before intervening. In addition to the puncture wounds, Evans suffered a hematoma to the left eyebrow and cheek. Evans was paroled on June 28, 2007, but violated that parole and returned to prison on January 18, 2008.

In January 2009, Evans filed a complaint pursuant to 42 U.S.C. § 1983, alleging that corrections officers failed to protect him from the assaults. He later amended the

2

complaint to add a retaliation claim against C.O. Myers, who, in a separate incident, allegedly "yelled at the top of his lungs" to other inmates that "Evans is a snitch." The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). A Magistrate Judge recommended that the motion be granted in part. In particular, the Magistrate Judge concluded that supervisory prison personnel could not be held liable in their individual capacities based on the doctrine of respondeat superior, that the Eleventh Amendment barred claims against all the defendants in their official capacities, and that Evans failed to state a retaliation claim against C.O. Myers because, inter alia, Evans did not allege that he was deterred from pursuing his lawsuit. The Magistrate Judge recommended, however, that the matter proceed to discovery "[a]s far as the defendants on the scene" of the assault. The District Court adopted the Magistrate Judge's Report and Recommendation.[1]

Following discovery, the remaining defendants filed a motion for summary judgment, which the Magistrate Judge recommended granting. The Magistrate Judge noted that, according to time cards, three of the named defendants (Corrections Counselor Reid, C.O. Hippo, and C.O. Sweet) were not at SCI-Cresson at the time of the assault. With respect to the first two phases of the assault, the Magistrate Judge concluded that the remaining defendants could not be liable because they were not aware of the risk to

---

[1] Evans does not challenge the order granting the motion to dismiss in part. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (stating that "[i]t is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

Evans. As to the third phase of the assault, the Magistrate Judge found that "the de minimis nature of the injuries Evans received suggests that it is impossible that Evans lay on the ground being kicked for 45 minutes." The District Court adopted the Report and Recommendation. Evans appealed.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an order granting a motion for summary judgment. Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (amended Dec. 1, 2010). "We review the facts in the light most favorable to the party against whom summary judgment was entered." Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993). We can affirm the judgment of the District Court on any basis supported by the record. Brown v. Pa. Dep't of Health Emergency Med. Servs., 318 F.3d 473, 475 n.1 (3d Cir. 2003).

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citations and internal quotations omitted). To establish a failure-to-protect claim, inmates must demonstrate that (1) they are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to their health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he official must actually be aware of the

4

existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). This Court has noted that "[t]he restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002).

With respect to the first two phases of the assault, we conclude that summary judgment was properly granted to the defendants. Evans did not allege that the defendants were aware of a threat to him when he was attacked in his cell. Indeed, according to the complaint and a prison incident report, the dispute between Evans and Cooper appeared to originate just prior to the assault. As the Magistrate Judge noted, Evans did not challenge the defendants' assertion that the history of events before the assault on Evans in his cell showed no history of violence or threat of violence against Evans.

There is also no evidence that the defendants were aware of an excessive risk to Evans' safety prior to the second phase of the assault. Evans alleged that he reported the initial assault to C.O. Woolridge. According to Evans' Complaint, "Officer Wooldridge told [me] to point out [the] attackers while there were still inmates out of their cell[s], creating a great risk for [me]. So I did just that thinking that Officer Woolridge would protect me from any further attacks. But before I could point out Cooper, Cooper walked right up to [me] and punched me in the face. Then [O]fficer [W]oolridge restrain[ed]

5

inmate [C]oper and ordered me to go stand over by the water fountain in front of the control center." This account of Cooper's second attack is confirmed by C.O. Woolridge's report that "out of the corner of my eye I saw inmate Cooper come up and start[] punching inmate Evans." In his declaration, C.O. Wooldridge stated that he "notice[d] a flash in [his] peripheral vision," which was "Cooper rush[ing] towards Evans." C.O. Woolridge then "secured inmate Cooper and escorted [him] off the wing." Although C.O. Wooldridge was aware that Evans had been attacked, Evans had not yet identified his assailant and there was no indication that Evans was still in danger. Immediately after Cooper punched Evans, C.O. Woolridge handcuffed Cooper and removed him from the area. On this record, viewing the evidence in a light most favorable to Evans, we conclude that a reasonable jury could not conclude that C.O. Woolridge knew of, or consciously disregarded, an excessive risk to Evans' safety.

The third phase of the assault occurred when Evans was attacked by Coleman and another inmate. Evans claims that the defendants "stood by watching the beating without intervening."[2] This Court has held "that a corrections officer's failure to intervene in a

---

[2] Among the defendants who allegedly failed to intervene, Evans identified Corrections Counselor Reid, C.O. Hippo, and C.O. Sweet. The Magistrate Judge properly held that these defendants "are entitled to summary judgment on the factual ground that there is no evidence that they were involved in the events of June 20, 2007." Time records for all three of these defendants indicate that they were not at SCI-Cresson at the time of the assault. Corrections Counselor Reid reported for work at 2:35 p.m. on June 20, 2007. C.O. Hippo did not work on June 20, 2007, as indicated in his time records and in his declaration. According to a declaration and Shift Assignment Sheet, C.O. Sweet was on transport duty to SCI-Waymart on June 20, 2007. Nevertheless, the record suggests that other

beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith, 293 F.3d at 650 (involving assault by corrections officers on inmate); see also Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973) (involving corrections officers' duty to intervene in inmate-on-inmate assault). In rejecting Evans' failure to protect claim based on this assault, the Magistrate Judge erred. First, the Magistrate Judge improperly resolved in the defendants' favor a factual dispute concerning "the length of time the . . . attack on Evans lasted before the situation was brought under control." According to the Magistrate Judge, "Evans' estimate of the fracas as going on for forty-five minutes instead of five minutes is understandable: events naturally seemed shorter to the corrections officers observing the scene and longer and more drawn out to Evans, who was the one being hit." Even viewing the length of the assault in the light most favorable to Evans, however, it was error to conclude that "the de minimis nature of the injuries Evans received suggests that it is impossible that Evans lay on the ground being kicked for 45 minutes." According to the Magistrate Judge, "[e]ven if a jury could believe that [the] defendants (with no apparent reason to want Evans injured only a week before parole) would be indifferent to a[] prolonged attack on Evans, and to the danger to themselves from having disorder escalate literally in front of their faces, there is no

named defendants--including Corrections Counselor Kukucka, C.O. Clawson, and Sergeant Miller (initially identified as a John Doe defendant)--were present during the assault.

7

objective evidence of injury from this . . . attack." Importantly, however, "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Smith, 293 F.3d at 648. Indeed, "de minimis injuries do not necessarily establish de minimis force." Id. at 649. As in Smith, "[a] properly instructed fact finder could, after considering all of the evidence, conclude that [Evans'] injuries were so minor that the defendants' account of the incident is more credible than [Evans'] . . . . However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." Id. Therefore, we conclude that summary judgment was inappropriate on this disputed factual record.

For the reasons given, we will affirm in part, vacate in part, and remand for further proceedings.