**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1522
_____

TYRONE MARTIN,
Appellant

v.

SECRETARY OF CORRECTIONS;
KEVIN KAUFFMAN; TIMOTHY MYERS;
RYAN KANAGY; BRENT DICKSON;
BRADD FAZENBAKER; SAMUEL BICKEL;
KEVIN BARGER; JOHN NEUMANN;
SUSAN GAFF; MATTHEW MORRISON;
MELISSA ROSS; WILLIAM DREIBELBIS;
CORRECT CARE SOLUTIONS

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-16-cv-02060)
District Judge: Honorable Robert D. Mariani

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2022

Before: GREENAWAY, JR., PORTER and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 19, 2022)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se Appellant Tyrone Martin appeals from the entry of judgment in favor of the Defendants in the United States District Court for the Middle District of Pennsylvania. For the reasons set forth below, we will affirm in part and vacate in part the judgment and remand this matter for further proceedings.

I.

Martin filed a complaint pursuant to 42 U.S.C. § 1983, primarily alleging that the Defendants violated his constitutional rights under the Eighth and First Amendments while he was incarcerated at the State Correctional Institution in Smithfield, Pennsylvania.

Because we write primarily for the parties, who are familiar with the facts, we will discuss the details of his claims only as they are relevant to the analysis. To summarize here, it suffices to say that Martin raised claims related to a May 5, 2015, incident with correctional officers, when he was restrained in, and removed from, his housing block following a conflict with staff. Within his complaint, Martin included a request for the appointment of counsel, which he renewed no fewer than nine times during the District Court proceedings. The District Court denied each request.

After the District Court ruled on several motions to dismiss and for summary judgment, the remaining claims included several claims of excessive force, a claim that Defendant Gaff failed to intervene to prevent the excessive use of force, and claims of

2

multiple violations of his First Amendment rights.[1]  Regarding the claims of excessive force, Martin alleged that he was initially assaulted by Defendants Dickson, Myers, Kanagy in his housing unit.  He further alleged that Defendants Fazenbaker, Bickel, Barger, and Morrison responded to the incident and joined in the assault and that Defendant Bickel stabbed him in the face with an unidentified object as he was restrained on the ground.  Finally, Martin alleged that Defendants Myers, Fazenbaker, Bickel, and Morrison carried him out of the housing unit after he was restrained and, in the process of carrying him, intentionally rammed his head into a steel doorframe.  The remaining defendants moved for summary judgment, and the District Court granted the motion.[2]  Martin timely appealed and filed a timely motion for reconsideration.  The District Court denied Martin's motion, and Martin filed an amended notice of appeal.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  On appeal, Martin challenges the District Court's judgment in the defendants' favor on his excessive force claims and the denial of his motions for counsel.[3]  We review de novo the District

---

[1] Martin previously sought to appeal the dismissal of one defendant from the complaint, and this Court dismissed the appeal for lack of jurisdiction.  See C.A. No. 17-3005, order entered on Feb. 12, 2018.

[2] Defendant Neumann passed away during the litigation.  As a result, the District Court dismissed Martin's individual capacity claim against Neumann.  The District Court also determined that Martin failed to state a claim of a constitutional violation against Neumann in his official capacity.

[3] In his notices of appeal, Martin indicated that he wanted to appeal "all orders/rulings."  However, because Martin raises challenges only to the District Court's denial of his excessive force claims (which we understand to include a challenge to the related failure-to-intervene claim) and the denial of his motions for counsel in his brief, he has forfeited

3

Court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in . . . favor" of the non-moving party. Id. at 255. We review the denial of Martin's requests for appointment of counsel for abuse of discretion. See Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).

### III.

The District Court properly granted summary judgment in favor of Defendants Dickson, Myers, and Kanagy on the excessive force claims relating to the initial altercation in the housing unit on May 5, 2015. In his complaint, Martin declared, under penalty of perjury,[4] that officers assaulted him because they were enraged that he refused an order to wait in the dayroom. However, his allegations could not create a genuine

---

any other issues, and we do not consider any other of the District Court's rulings. See Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020).

[4] See Parkell v. Danberg, 833 F.3d 313, 320 (3d Cir. 2016) ("Much of Parkell's version of events is supported solely by his own statements in verified complaints and other court filings. Because those documents were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.") (citing United States v. 225 Cartons, More or Less of an Article or Drug, 871 F.2d 409, 414 n.4 (3d Cir. 1989).")

issue of material fact to counter the evidence the defendants put forth to show that Martin struck first and that they then used force as necessary to get him under control (with one officer acknowledging that he struck Martin in the head and face). In particular, Martin himself contradicted his own account in a video made in the immediate aftermath of the incident.[5] Cf. Scott v. Harris, 550 U.S. 372, 380 (2007). ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") In the video, which we have reviewed, Martin made repeated statements that he initiated the physical confrontation because he felt threatened.

Given his statements, no reasonable factfinder could conclude that the officers' use of force was unprovoked or that the officers acted "maliciously and sadistically for the purpose of causing harm" in responding to Martin's actions and bringing him to the ground to restrain him. Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation and quotation marks omitted); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain

---

[5] There was no camera present in the housing unit, but prison staff recorded Martin's transportation to the medical office, an initial interview with him by security staff, and his escort to a holding cell.

order), abrogated in part on other grounds by Kingsley v. Hendrickson, 576 U.S. 389 (2015).

However, upon review of the record, we conclude that genuine issues of material fact precluded summary judgment on the other excessive force claims. Martin alleged that officers Dickson, Myers, Kanagy, Fazenbaker, Bickel, Barger, and Morrison assaulted him after he was restrained.[6] The District Court did not address this allegation separately and instead, appears to have conflated its analysis of the claim with its discussion of the initial altercation. Furthermore, even if some degree of force was necessary to restrain Martin after he was brought to the ground, a fact finder who believed Martin's statements and supporting affidavits that he was struck repeatedly while restrained could conclude that the force allegedly used was excessive under the circumstances. See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) ("Punching and kicking someone who is handcuffed behind his back and under the control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force." (quoting Hudson v. McMillian, 503 U.S. 1, 10 (1992)); Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000) ("If a jury believes Brooks's version of the facts, there is no question that the defendants' use of force was excessive in light of the

---

[6] The District Court also erroneously concluded that Defendant Barger was not personally involved in the altercation. In reaching this conclusion, the court appears to have resolved a dispute in favor of the Defendants; Martin alleged under penalty of perjury that Barger "after arriving on the scene punched, kicked and verbally assaulted" him. ECF No. 1, at *4.

circumstances confronting them[,]" including that Brooks was restrained at the time of the alleged assault).[7]

Additionally, a dispute of fact precludes summary judgment on Martin's claim that Defendants Myers, Fazenbaker, Bickel, and Morrison intentionally slammed his head into the door while he was being escorted to the medical office. The various Defendants indicated that Martin refused to walk on his own and continued to struggle, and that the officers carrying Martin lost control and fell, accidentally knocking his head into the doorframe. ECF No. 221, at *3. Martin alleged that he was unconscious following the assault in the housing unit and that the officers intentionally knocked his head into the doorframe. ECF No. 1, at *4, 8. Video footage shows multiple officers carrying Martin down the hallway while restrained and crashing his head into a doorframe. The Court

---

[7] Martin claimed that after he was thrown to the floor and held down, Defendants Dickson, Myers, Kanagy continued to "punch[], kick[], and choke[]" him. ECF No. 1, at *8. Martin further alleged that he was "assaulted by arriving Defendants [Fazenbaker, Bickel, Barger, and Morrison]" after they responded to the housing unit. Id. Finally, he claimed that Defendant Bickel stabbed him in the face with a sharp object while he was restrained. Martin supported these allegations with affidavits from two prisoners who observed the incident and gave arguably consistent reports with his account. ECF No. 1, at *13-16. Defendants mainly elided the first phase of the incident with the second phase while simultaneously acknowledging that at least some of the later arriving officers also used force during the incident. Moreover, the facts in the record are in dispute over when, in fact, Martin was restrained. The Defendants stated that Martin continued to struggle with both the initial officers on the scene and the later-arriving officers until he was handcuffed by Defendant Morrison, one of the officers who responded to the housing unit. ECF No. 221, at *2. However, Defendant Dickson, one of the officers involved from the beginning of the altercation, testified that he handcuffed Martin during the altercation. ECF No. 230, Ex. 1, at *98. Martin claimed that he was "unconscious" when the second group of Defendants arrived, ECF No. 1, at *8, and the witnesses supporting him stated that his legs were "pinned" and his hands were "subdued," id. at *13, and that Martin was "pinned the entire time … until responding CO's came," id. at *14.

7

relied on this footage to conclude that "Martin failed to present any evidence that the officers intentionally slammed him into the doorframe and the video footage does not portray any intentional act by Defendants." Op. at 19. However, the video is ambiguous. Cf. Scott, 550 U.S. at 378 (relying on "videotape [that] quite clearly contradicts the version of the story told by respondent"). Therefore, it was inappropriate for the District Court to accept the defendants' version of this dispute at the summary-judgment stage. See Rivas v. City of Passaic, 365 F.3d 181, 199 (3d Cir. 2004).

The District Court further erred in granting summary judgment for Defendant Gaff on Martin's claim that the lieutenant arrived on the scene and failed to intervene in the assault. "[C]orrections officers have a duty to intervene when other officers use excessive force irrespective of the rank of the offending officers." Smith, 293 F.3d at 654–55. Martin alleged that Gaff arrived in the housing unit and was present when officers assaulted him while he was restrained. Defendants claimed that by the time she arrived Martin was "already handcuffed." ECF No. 221, at *4. The District Court credited the Defendants' version of events but failed to evaluate the claim against Martin's allegation that he was assaulted while restrained and that Gaff had an opportunity to prevent that assault. Given the dispute over when Defendants had Martin under control, when he was handcuffed, and whether they continued their assault while he was restrained, a determination that Gaff arrived once Martin was already handcuffed does not definitively resolve the dispute in Defendant Gaff's favor. See Smith, 293 F.3d at 654–55 (stating that correctional officer who ignored a realistic opportunity to intervene in another officer's use of excessive force is liable under the Eighth

8

Amendment); cf Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973) (involving corrections officers' duty to intervene in inmate-on-inmate assault). The District Court also determined that Gaff could not intervene to prevent the defendants from ramming Martin's head into the doorframe because it was done accidentally. Although this is arguably a closer call, it is possible that a jury, having determined that Gaff failed to prevent an assault on Martin while he was restrained, could also reasonably conclude that Gaff could have foreseen, and prevented, the additional assault. Accordingly, the District Court erred in granting summary judgment in favor of Defendant Gaff.

Finally, we cannot say that the District Court abused its broad discretion under 28 U.S.C. § 1915(e)(1) in denying Martin's various motions for appointment of counsel. The District Court considered Martin's requests in the context of their timing and relevant stage of litigation and weighed the relevant factors, including Martin's ability to litigate the action without counsel. See Houser v. Folino, 927 F.3d 693, 698 (3d Cir. 2019); see also Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993). However, we express no opinion on the merit of any renewed counsel motion on remand, particularly if this case proceeds to trial (or if the District Court reopens discovery to permit Martin to develop additional support for his allegations through means typically reserved for counsel, such as depositions).

Accordingly, we will affirm in part and vacate in part the District Court's judgment. Specifically, we will vacate the judgment insofar as the District Court (1) granted summary judgment to the defendants on Martin's excessive-force claims related to his allegations that he was assaulted by Defendants Dickson, Myers, Kanagy, Fazenbaker,

9

Bickel, Barger, and Morrison while restrained in the housing unit; (2) granted summary judgment to Defendants Myers, Fazenbaker, Bickel, and Morrison on Martin's excessive-force claims related to his allegations that the officers assaulted him while carrying him to the medical unit; and (3) granted summary judgment to Defendant Gaff for her failure to intervene. The District Court's judgment is otherwise affirmed. This matter is remanded for further proceedings consistent with this opinion.